USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/28/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

PARUL JAIN,

                    Plaintiff,

     -against-

THE MCGRAW-HILL COMPANIES, INC.,
STANDARD & POOR'S CORPORATION,
DIANE VAZZA and DAVID WYSS,

                    Defendants.

------------------------------------------------------------x

09 Civ. 6520 (SHS)

OPINION

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Parul Jain brings this action against the McGraw-Hill Companies, Inc. ("McGraw-Hill"), Standard & Poor's Corporation ("S&P"), Diane Vazza, and David Wyss for violations of the Family and Medical Leave Act. 29 U.S.C. § 2601 *et. seq.* She also asserts various New York state law claims against defendants. Plaintiff's claims arise from her employment at S&P from 2005 through her termination in 2008. The complaint originally alleged fifteen counts against defendants; Jain has voluntarily withdrawn two of those counts. Defendants have now moved for summary judgment on the remaining thirteen counts. Because plaintiff has failed to present evidence of a genuine dispute of material fact, that motion is granted.

I. BACKGROUND

The following facts are not in dispute.

A. Plaintiff's Employment at S&P in 2005

Plaintiff was employed by S&P as the Director of U.S. Credit Strategy from September 5, 2005 through June 16, 2008. (Def.'s Local Civil Rule 56.1 Statement of Undisputed Facts

1

("Def.'s 56.1") ¶ 1, 3, 7; Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶ 1, 11.) Jain initially reported to Diane Vazza, the Managing Director of Global Fixed Income Research. (Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.) In late 2005, Jain requested a special office chair to address a back problem and S&P subsequently granted the request. (Def.'s 56.1 ¶ 25; Pl.'s 56.1 ¶ 25.)

In her 2005 Performance Management Process ("PMP") review of Jain's work performance, Vazza rated Jain in the next to last category in eight of eleven areas that were being evaluated. (Ex. H to Decl. of Steven D. Hurd dated Oct. 7, 2010 ("Hurd Decl.").) Her "overall rating" was "Target Achievement," which was the next to lowest rating of four possible ratings.[1] (Id.) Vazza's conclusion was that "while [Jain] has made some progress, the goals require allot [sic] more work to achieve which she should be able to accomplish in 2006." (Id.) She also noted that Jain "has the potential to be a strong performer." (Id.)

B. Plaintiff's Deteriorating Relationship with Vazza

By spring 2006, the relationship between Jain and Vazza had become strained. On May 25, 2006, Jain submitted a written complaint about Vazza to Cliff Griep, who at that time was Chief Credit Officer of S&P. (Def.'s 56.1 ¶ 30; Pl.'s 56.1 ¶ 30.) Jain's complaint alleged that (1) Vazza "berated, belittled and threatened" her, (2) Vazza did not give proper credit to her team for the authorship of research reports, even though Vazza allegedly did " no research and no writing" herself, and (3) Vazza allegedly declared several unidentified pre-hire promises made to Jain to be "null and void." (Ex. I to Hurd Decl.)

In late June 2006, Vazza gave Jain an oral performance warning, (Def.'s 56.1 ¶ 32; Pl.'s 56.1 ¶ 32), and approximately three months later, a "final warning." (Ex. K to Hurd Decl.) In the

---

[1] The four available ratings were (1) "Breakthrough Achievement," (2) "Exceptional Achievement," (3) "Target Achievement," and (4) "Requires Improvement."

2

warning Vazza wrote Jain that she had not improved in the three specific areas identified in the June warning. (*Id.*) Vazza reiterated that Jain had been directed to improve in the areas of internal communications, following directions, and external communications. (*Id.*) Vazza also cited complaints from four separate co-workers as well as a client regarding Jain's "sub par" performance. (*Id.*) Vazza concluded the letter by informing Jain that "failure to improve immediately will lead to your termination." (*Id.*)

In response to the letter from Vazza, Jain submitted a nine-page formal reply on January 15, 2007 to Griep and Richard Fisher, the Vice President of Human Resources. (Ex. 48 to Pl.'s Exs. in Supp. of Opp'n to Def.'s Mot. for Summ. J.) Jain's letter also requested that her supervision be transferred either to Griep or to David Wyss, the Chief Economist and Managing Director of S&P. (*Id.*)

Vazza gave Jain an overall rating of "Requires Improvement" (the lowest possible rating) in her 2006 PMP. (Ex. M to Hurd Decl.) Vazza wrote that, among other things, Jain's "skill set is narrower than her mindset," "she does not adhere to deadlines," and "she is not able to anticipate and manage problems." (*Id.*)

C. Plaintiff's Transfer to Wyss's Supervision

In April 2007, Griep transferred supervision of Jain to David Wyss. (Dep. of David Wyss dated June 2, 2010, at 53:9-54:8, Ex. C to Hurd Decl.) In Jain's 2007 PMP, Wyss gave Jain the same overall rating as Vazza had: "Requires Improvement." (Ex. O to Hurd Decl.) Wyss noted that "Parul continues to perform at a lower level than that of a director, that is, she requires constant supervision, guidance and direction." Wyss also reported that Jain lacked necessary leadership, communication, and interpersonal skills, and that she "must learn to take direction and guidance to those who are in management roles." (*Id.*)

3

On March 7, 2008, Wyss gave Jain a Written Performance Warning. (Ex. P to Hurd Decl.) Wyss reiterated that Jain had received a Written Warning in 2006 and had been given a "Requires Improvement" rating in both her 2006 and 2007 PMPs. (*Id.*) Wyss outlined several specific areas that required improvement, including adhering to deadlines, treating co-workers with respect, and writing skills. (*Id.*) Wyss emphasized that this was Jain's "last opportunity to improve" and that failure to improve in the required areas could lead to her "immediate termination." (*Id.*) Wyss concluded by asking Jain to meet with him on April 7 to discuss her performance and goals for the remainder of 2008. (*Id.*)

D. <u>Plaintiff's Request for FMLA Leave and Eventual Termination</u>

On April 7, Jain reported that she had aggravated her back and could not come to work. (Ex. Q to Hurd Decl.) She did not come to work on April 8, 9 and 10. (*Id.*) On April 10, Jain requested that she be allowed to work from home pending the resolution of her medical problem. (*Id.*) She provided a doctor's note indicating that she would not be able to come in to work for three weeks. (Ex. R to Hurd Decl.) On April 25, Joseph Terino, Director of Human Resources at S&P, denied Jain's request to work from home. (*Id.*) He stated that, because Jain was on a Written Performance Warning, she "required heightened supervision" and "we cannot permit you to work from home." (*Id.*) Terino suggested that, if Jain was unable to come to work to perform the essential functions of her job, she apply for leave under the Family and Medical Leave Act ("FMLA") and for Short-Term Disability benefits. (*Id.*) Terino enclosed instructions for reporting a disability. (*Id.*)

On May 2, 2008, McGraw-Hill received Jain's request for FMLA leave. (Ex. S to Hurd Decl.) Jain's FMLA leave request was granted on May 29, retroactive to April 11. Jain was also granted Short-Term Disability benefits. (Ex. T to Hurd Decl.)

Jain returned to work on June 16, 2008 (Def.'s 56.1 ¶ 52; Pl.'s Supplemental 56.1 ¶ 59), and was terminated that same day. (Ex. E to Hurd Decl.; Ex. 76 to Pl.'s Exs. in Supp. of Opp'n Def.'s Mot. for Summ. J.)

E. This Action

Plaintiff brought this action in the Supreme Court of the State of New York, County of New York, alleging various violations of state and federal law. (Compl. ¶¶ 101-86.) Defendants then removed the action to the U.S. District Court for the Southern District of New York on the basis of this Court's federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. (Notice of Removal, at 1, dated July 22, 2009.)

Plaintiff subsequently voluntarily dismissed her claims of retaliation and interference with rights under the New York City Administrative Code, as well as her claims based upon gender, race and national origin discrimination. (Stipulation of Partial Dismissal with Prejudice ¶¶ 1-4.) As noted above, defendants have moved for summary judgment on the remaining thirteen counts.

On September 28, 2011, this Court granted defendants' motion from the bench and writes now to further elucidate its reasoning for that determination.

## II. DISCUSSION

A. Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing

summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

### B. Disability Discrimination

Jain alleges that defendants engaged in disability discrimination, and aiding and abetting discrimination, in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). (Compl. ¶¶ 129-60.) This Court's analysis will begin with the primary liability of the employer for discrimination, as the NYSHRL and NYCHRL require "that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999).

Plaintiff's primary disability discrimination claims are analyzed using the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying the *McDonnell Douglas* analysis to employment discrimination claims under the NYSHRL and the NYCHRL). The *McDonnell Douglas* framework provides that, once a plaintiff makes out a prima facie case of retaliation or discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802-03. If the defendant produces evidence of such a reason, the plaintiff must point to evidence that would allow a reasonable factfinder to conclude that the defendant's reason is merely a pretext for discrimination or retaliation. *Id.* at 804.

For the purposes of this motion, the Court assumes that Jain has established a prima facie case of disability discrimination, and finds that defendants have met their burden of identifying a legitimate, nondiscriminatory reason for plaintiff's termination. Defendants point to ample

evidence in the record that plaintiff had a history of repeated poor performance reviews, and had been subject to several specific, even dire, warnings regarding her work performance. (Exs. E, J, K, M, O, P to Hurd Decl.) The burden thus shifts back to Jain to demonstrate that the stated reason for her termination—namely, her poor performance—was merely a pretext for unlawful discriminatory intent. Plaintiff may "succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff has failed to meet this burden. Jain's purported evidence of pretext is insufficient to allow a reasonable factfinder to find for her on this issue. Though plaintiff asserts that Vazza's emails regarding plaintiff's request for a special chair on this matter demonstrate "her disability based discrimination" (Pl.'s 56.1 ¶ 39; Pl.'s Supplemental 56.1 ¶¶ 8-10), the evidence in the record demonstrates only that Vazza asked Jain to follow S&P guidelines in requesting the chair. (Ex. 30 to Pl.'s Exs. in Supp. of Opp'n to Def.'s Mot. for Summ. J.) While it is true that Vazza called Jain an "undesirable employee" (Ex. 31 to Pl.'s Exs. in Supp. of Opp'n to Def.'s Mot. for Summ. J.), the context of the statement indicates that Vazza viewed Jain as undesirable because Jain was "nasty" in requesting the chair, and was "harassing" other employees about obtaining the chair, not because Jain had a back condition. (*Id.*)

Plaintiff also alleges that Wyss made "ample derogatory comments" about her back condition. (Pl.'s 56.1 ¶ 55.) Plaintiff cites only to a portion of Wyss's deposition transcript in which Wyss states that Jain frequently gave excuses for staying at home, "from missing the train to having to stay home because her daughter had problems, to illness…" (Dep. of David Wyss dated June 2, 2010, at 68:15-20, Ex. C to Hurd Decl.) This statement is not derogatory, nor does

7

it mention plaintiff's back condition. It is manifestly insufficient to demonstrate that the given reason for Jain's termination was a pretext for discrimination.

In sum, a reasonable trier of fact could not conclude from the evidence presented that defendants' decision to terminate Jain was motivated by discriminatory intent.

### C. Family and Medical Leave Act

Plaintiff alleges that defendants violated the FMLA by terminating her for exercising her statutory right to take medical leave. (Compl. ¶¶ 167-69.) A claim of retaliation under the FMLA is analyzed using the same familiar three-part *McDonnell Douglas* framework as the Court utilized in analyzing plaintiff's disability discrimination claims. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

Once again, assuming that plaintiff has met her prima facie burden, she has failed to show that defendants' legitimate, non-discriminatory reason for termination—her poor work performance—was pretextual. Plaintiff's sole evidence of retaliatory intent is the timing of the termination: she was terminated the day she returned from her FMLA leave. While temporal proximity can support a prima facie showing of discrimination, "something more is required to show evidence of discriminatory intent once defendants have articulated a legitimate reason for the adverse action." *Behringer v. Lavelle Sch. for the Blind*, No. 08 Civ. 4899, 2010 U.S. Dist. LEXIS 134440, at *50 (S.D.N.Y. Dec. 17, 2010); *see also Colombo v. E. Irondequoit Cent. Sch.*, No. 07-CV-6270, 2010 U.S. Dist. LEXIS 141961 at *45-46 (W.D.N.Y. Dec. 17, 2010) ("Temporal proximity, standing alone, is insufficient to create a triable issue of fact as to pretext.") (citing *Simpson v. New York State Dept. of Civil Servs.*, 166 Fed. App'x 499, 502 (2d Cir. 2006) (unpublished). As Jain's only evidence of discrimination based on the FMLA is the timing of her termination, she has failed to meet her burden of proving that defendants stated reason for her termination was a pretext.

8

D. Breach of Contract

Plaintiff alleges that McGraw-Hill's employee manual constituted an "express or implied" contract with Jain that "she would be treated in accordance with company policy, including a policy against retaliation for use of the company's grievance procedures." (Compl. ¶¶ 124-28.)

Policies in a personnel manual specifying the employer's practices with respect to the employment relationship may become a part of the employment contract. *See, e.g., Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 87-89 (2d Cir. 1998). However, to establish that such policies are a part of the employment contract, an employee alleging a breach must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment. *See Lobosco v. New York Tel.*, 96 N.Y.2d 312, 316 (2001). The New York Court of Appeals admonishes that "routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Lobosco*, 96 N.Y.2d at 317.

Here, plaintiff is unable to prove the existence of an express written policy limiting the employer's right of discharge as required by *Lobosco*. The employee manual cited by plaintiff contains not a single statement indicating the existence of such a policy. To the contrary, it contains numerous, explicit disclaimers which preclude the manual from serving as the basis for a binding contract. Specifically, the manual prominently states on its first page that "[t]his Guide does not constitute a contract as to any or all terms, but merely provides guidelines." (Ex. M to Decl. of Nathaniel M. Glasser dated Dec. 6, 2010 ("Glasser Decl.").) The manual also contains a bold and large-type heading entitled: "IMPORTANT NOTICE: EMPLOYMENT AT WILL," which informs employees that "Neither this Guide, nor any other Corporation Guidelines,

9

policies or practices create an employment contract." (*Id.*) It also states explicitly that "This Guide is not intended to provide any contractual remedy to the Corporation's employees." (*Id.*) The manual emphasizes that "[e]mployment with the Corporation is 'at will.'" (*Id.*)

Where an employee manual "expressly and specifically disavow[s] any intent on the [employer's] part to accept contractual limitations on its rights as an at-will employer," no binding contract is formed. *Baron v. Port Auth*, 271 F.3d 81, 86 (2d Cir. 2001) (noting that such disclaimers have a "fatal effect" on the plaintiffs' implied contract claims). Given the clear and unambiguous nature of the disclaimers, the employee manual is insufficient to create a binding contract between plaintiff and defendants.

E. Prima Facie Tort

Jain alleges that defendants' actions constitute a prima facie tort. (Compl. ¶¶ 183-86.) For an action to lie in prima facie tort, plaintiff must prove the following elements: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990).

"Prima facie tort was designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy, and not to provide a catch all alternative for every cause of action which is not independently viable." *Epifani v. Johnson*, 65 A.D.3d 224, 232 (2d Dep't 2009). Plaintiff's prima facie tort claim is insufficient as a matter of law because it is duplicative of several of plaintiff's other tort claims. The same substantive acts that underlie plaintiff's prima facie tort claim also underlie her intentional and negligent infliction of emotional distress claims. Because plaintiff's prima facie tort claim is essentially a restatement of her emotional distress claims, that claim fails as a matter of law. *Long v. Beneficial Finance Co. of New York*, 39 A.D.2d 11, 14 (4th Dep't 1972) ("A cause of action

sounding in a known or recognized tort, e.g., intentional infliction of emotional distress, should not, and indeed cannot, be characterized as a prima facie tort."); *see also Gertler v. Goodgold*, 107 A.D.2d 481, 490 (1st Dep't 1985) (dismissing prima facie tort claim on the grounds it was simply a restatement of the plaintiff's breach of contract and intentional tort claims).

In addition, the plaintiff has not alleged special damages sufficient to support a prima facie tort claim. "Special damages must be alleged with sufficient particularity to identify actual losses and be related causally to the tortious acts." *Hughes v. Std. Chtd. Bank PLC*, No. 09 Civ. 4595, 2010 U.S. Dist. LEXIS 38871, at *23-24 (S.D.N.Y. Apr. 14, 2010) (quoting *Epifani v. Johnson*, 65 A.D.3d 224, 233 (2d Dep't 2009)). Plaintiff points to no evidence in the record that could establish the specific loss attributable to the tortious acts. Plaintiff's allegation that she has suffered "pecuniary harm, including without limitation, lost salary, bonuses, benefits and other income, as well as other damages . . ." (Compl. ¶ 186) is insufficiently concrete to sustain her cause of action. *See Hughes*, U.S. Dist. LEXIS 38871, at *23-25 (allegations of specific numerical amounts of lost compensation, including 2008 bonus and share awards, did not constitute special damages because plaintiff did not allege actual losses that were causally related to the alleged tortious act).

F. Abandonment of Counts 1, 2, 3, 6, 13, and 14

Among plaintiff's original fifteen claims are claims for intentional misrepresentation (Count 1), negligent misrepresentation (Count 2), breach of contract based on alleged pre-hiring discussions with Vazza (Count 3), retaliation pursuant to the New York State Human Rights Law (Count 6), intentional and negligent infliction of emotional distress (Count 13), and negligence (Count 14). (Compl. ¶¶ 101-86.) Defendants' motion for summary judgment specifically addressed these claims. (Def.'s Mem. Of Law in Supp. of their Mot. for Summ. J. at 11-12, 15-18, 19-24.) Plaintiff's opposition papers, however, responded to none of those arguments. The

11

Court therefore deems those six claims abandoned and grants summary judgment on them. *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 208 (S.D.N.Y. 2009) (deeming plaintiff's claim abandoned where plaintiff "made no attempt to rebut defendants' motion for summary judgment on this point" and plaintiff's "opposition papers do not even mention the claim"); *Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614, 2006 U.S. Dist. LEXIS 7368, at *12 (S.D.N.Y. Feb. 28, 2006) (deeming plaintiff's claims to be abandoned after plaintiff failed to oppose a summary judgment motion specifically addressing those claims) (citing *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)); *Anti-Monopoly, Inc., v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

## III. CONCLUSION

Accordingly, because plaintiff has failed to present evidence of a genuine dispute of material fact, this Court grants defendants' motion for summary judgment.

Dated: New York, New York
October 27, 2011

Sidney H. Stein, U.S.D.J.